**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

KENNETHA SHORT and PERNELL JONES, SR.,
in their capacity as administrators of the ESTATE
OF TYSHON JONES,

<div align="center">Plaintiffs,</div>

<div align="center">– against –</div>

CITY OF ROCHESTER,

<div align="center">Defendant.</div>

6:22-cv-06263

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.    PLAINTIFFS HAVE ADEQUATELY ALLEGED THEIR CLAIMS ....................... 3

    A.    Plaintiffs Have Adequately Alleged that the City Violated the ADA
        and Rehabilitation Act ...................................................................................... 4

    B.    Plaintiffs Have Adequately Allege Their Remaining Claims ........................... 9

    C.    The City Fails to Articulate Any Privilege that Shields the
        Municipality from Liability ............................................................................ 13

II.   THE CITY'S REFERENCES TO UNSPECIFIC VIDEOS ARE
    INSUFFICIENT TO DISMISS THE COMPLAINT ................................................. 13

CONCLUSION ...................................................................................................................... 15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amnesty Am. v. Town of W. Hartford*,
361 F.3d 113 (2d Cir. 2004)................................................................12

*Askins v. Doe No. 1*,
727 F.3d 248 (2d Cir. 2013)................................................................12

*Biggs v. City of New York*,
No. 08-CV-8123 (PGG), 2010 WL 4628360 (S.D.N.Y. Nov. 16, 2010)............8, 11

*Butchino v. City of Plattsburg*,
No. 8:20-cv-796, 2022 WL 137721 (N.D.N.Y. Jan. 14, 2022)............6, 8

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)................................................................13

*Estate of Chipwata v. Rovinetti*,
No. 02-CV-858 (DJS), 2004 WL 722166 (D. Conn. Mar. 31, 2004)...............8, 11

*Daniels v. City of Binghamton*,
947 F. Supp. 590 (N.D.N.Y. 1996)......................................................10

*Dasrath v. City of New York*,
No. 15-cv-766, 2018 WL 10501877 (E.D.N.Y. Sept. 25, 2018)............10

*Durr v. Slator*,
558 F. Supp. 3d 1 (N.D.N.Y. 2021)....................................................7, 8

*Cowan ex rel. Estate of Cooper v. Breen*,
352 F.3d 756 (2d Cir. 2003)................................................................9, 10

*Felix v. City of New York*,
344 F. Supp. 3d 644 (S.D.N.Y. 2018)..................................................4, 6

*Felix v. City of New York*,
No. 16-cv-5845 (AJN), 2020 WL 6048153 (S.D.N.Y. Oct. 13, 2020)............5

*Gersbacher v. City of New York*,
134 F. Supp. 3d 711 (S.D.N.Y. 2015)..................................................15

*Graham v. City of New York*,
928 F. Supp. 2d 610 (E.D.N.Y. 2013)..................................................13

ii

*H.B. by & through Patricia F. v. Pittsburgh Pub. Schs.*,
No. CV 19-1326, 2020 WL 2949367 (W.D. Pa. May 13, 2020)...........................................9

*Hellstrom v. U.S. Dep't of Veterans Aff.*,
201 F.3d 94 (2d Cir. 2000).........................................................................................15

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003).........................................................................................4

*Holmes v. City of New York*,
No. 14 CV 5253-LTS, 2016 WL 915332 (S.D.N.Y. Mar. 4, 2016) ......................................14

*Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993)...................................................................................................13

*Leo v. Long Island R. Co.*,
307 F.R.D. 314 (S.D.N.Y. 2015) ..................................................................................15

*Loeffler v. Staten Island Univ. Hosp.*,
582 F.3d 268 (2d Cir. 2009).........................................................................................4

*Lopez v. Chappius*,
No. 6:17-CV-06305 EAW, 2021 WL 859384 (W.D.N.Y. Mar. 8, 2021)
(Wolford, J.).................................................................................................3, 4, 6, 11

*McElwee v. Cty. of Orange*,
700 F.3d 635 (2d Cir. 2012).........................................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978)...................................................................................................12

*Morales v. City of New York*,
No. 13 Civ. 7667, 2016 WL 4718189 (S.D.N.Y. Sept. 7, 2016)...........................................8

*Moran v. Town of Greenwich*,
No. 3:19-CV-722, 2021 WL 3604349 (D. Conn. Aug. 13, 2021)..........................................14

*Negron v. City of New York*,
976 F. Supp. 2d. 360 (E.D.N.Y. 2013) ...........................................................................10

*Oakley v. Dolan*,
980 F.3d 279 (2d Cir. 2020).........................................................................................4

*Rose v. City of Utica*,
No. 614CV01256BKSTWD, 2015 WL 13852450 (N.D.N.Y. Dec. 2, 2015) ........................10

*Sage v. City of Winooski*,
No. 2:16-cv-116, 2017 WL 1100882 (D. Vt. Mar. 22, 2017)...........................................6, 7, 8

*Sajimi v. City of New York*,
No. 07-CV-3252 (ENV) (MDG), 2011 WL 135004 (E.D.N.Y. Jan. 13, 2011) ...................12

*Sheehan v. City & Cty. of San Francisco*,
743 F.3d 1211 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600
(2015) .................................................................................................................................9

*Triolo v. Nassau Cty.*,
24 F.4th 98 (2d Cir. 2022) ...............................................................................................13

*Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
843 F.3d 561 (2d Cir. 2016)................................................................................................6

*Wagner v. City of New York*,
No. 14 Civ. 2521, 2015 WL 5707326 (S.D.N.Y. Sept. 28, 2015)......................................8

## Statutes

42 U.S.C. § 1983....................................................................................................................9, 12

ADA ............................................................................................................................... *passim*

ADA Title II..................................................................................................................................4

Americans with Disabilities Act ..................................................................................................1

Rehabilitation Act ..............................................................................................................1, 4, 8, 9

## Other Authorities

Fourth Amendment .................................................................................................................1, 8

Fourteenth Amendment .............................................................................................................12

Fed. R. Civ. P. 12(a) ...................................................................................................................5

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 7, 11, 13

United States Constitution ...........................................................................................................1

## PRELIMINARY STATEMENT

This action arises from the tragic and preventable death of Tyshon Jones at the hands of a Rochester Police Department ("RPD") officer.

Tyshon was plainly experiencing a mental-health crisis at the time he was shot and killed. The Complaint alleges that the RPD failed to reasonably accommodate Tyshon's mental disability. It further alleges that the RPD had a policy and practice of using excessive force against Black people and those suffering from mental illness, and that it failed to train its officers to de-escalate interactions with these populations despite knowing it would likely lead to violations of the Constitution and federal and state laws. In sum, the Complaint alleges that the City of Rochester (the "City") violated Tyshon's rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the United States Constitution, and New York state law.

The City seeks dismissal on several narrow grounds, none of which is meritorious. First, the City contends it cannot be liable under the ADA and the Rehabilitation Act because the responding officer did not know with certainty that Tyshon had a mental disability. The allegations of the Complaint and the caselaw both refute this argument. Next, the City argues that Plaintiffs' disability discrimination claims should be dismissed because Officer Drake acted reasonably in using deadly force. But this argument is based on Fourth Amendment precedent and has no application to ADA or Rehabilitation Act claims. Finally, the City contends that the remainder of the claims should be dismissed because the City's actions were reasonable as a matter of law, but such a fact-bound determination is premature at the pleading stage.

Having no basis to dismiss this action based on the face of the Complaint, the City asks the Court to consider extrinsic video evidence. But the City fails to identify the evidence in question

1

with any particularity.  Even if it had, the City fails to show that any such video or videos are "integral" to the Complaint, and they cannot be considered at this stage.

The City does not meaningfully grapple with the well-pled allegations in Plaintiffs' Complaint.  It does not consider those allegations in light of the relevant legal standard at this stage of litigation, nor does it demonstrate that Plaintiffs have failed to adequately allege each claim.  In short, the City has failed to meet its burden.  Its Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

In the early morning hours of March 10, 2021, Tyshon Jones—a young Black man in the throes of severe mental distress—became another victim of RPD's policy and practice of engaging in excessive force against Black people and people with mental illness.  As alleged in the Complaint, Tyshon arrived at the Open Door Mission, walked inside, grabbed a bucket of ordinary kitchen knives, and left.  (Compl. ¶ 40.)  He did not attempt to harm anyone at that time.  (*Id.*)  Officers Drake, Jackson, Glynn, and Carello later arrived at the scene to "ensure the physical safety of Tyshon and any other persons around him."  (*Id.* ¶ 43.)  The officers observed Tyshon alone in a deserted intersection, "actively cutting himself."  (*Id.* ¶¶ 44-45.)  The officers knew they did not have nonlethal weapons that could have been used to disable Tyson, and were otherwise unequipped to engage him.  (*See id.* ¶¶ 51-54.)  Acknowledging this, one officer told Officer Drake: "just get in your car, Drake, and let's back off."  (*Id.* ¶ 46.)  Instead, Officer Drake continued to engage with Tyshon, who was in clear distress, and begged the officers: "shoot [me]."  (*Id.* ¶ 47.)  Tyshon, who presented as suicidal, did not acknowledge the various orders and commands shouted by the officers and continued to cut himself.  (*Id.* ¶ 49.)  Eventually, as he walked toward Officer Drake, Drake shot Tyshon five times, killing him.  (*Id.* ¶ 50.)

Tyshon's death is only one of numerous instances in which RPD officers have used excessive force against Black people and people with mental illness. (*See id*. ¶¶ 67-78.) At the time of Tyshon's death, the City had an unlawful municipal policy of allowing the RPD to use objectively unreasonable force, particularly against Black residents and residents with mental illness. (*Id*. ¶ 101.) The City was aware that the "RPD's existing policies and practices made it substantially likely that disabled individuals would be denied their federally protected rights under the ADA in use-of-force interactions with the RPD and acted with deliberate indifference in failing to prevent or mitigate the denial of those rights." (*Id*. ¶ 90.) The City was also aware that "a lack of appropriate training and/or supervision (including training in de-escalation techniques and access to nonlethal force) would frequently result in its officers using objectively unreasonable and disproportionate force against persons experiencing mental-health crises, and was deliberately indifferent to the constitutional rights of those interacting with its police in failing to provide such training and supervision." (*Id*. ¶ 103.)

To date, the City's attempts to rectify this policy and pattern have been limited and deficient. (*See id*. ¶ 79.) The inadequate training of RPD officers—and the ineffective use of that training when needed—resulted in Tyshon's death. (*Id*. ¶¶ 86-106.)

## ARGUMENT

## I.    PLAINTIFFS HAVE ADEQUATELY ALLEGED THEIR CLAIMS

As the City acknowledges, "[i]n deciding whether to grant a motion to dismiss for failure to state a claim, "the Court must accept all factual allegations in the … complaint as true and draw all reasonable inferences in favor of the plaintiff." *Lopez v. Chappius*, No. 6:17-CV-06305 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (Wolford, J.) (alterations omitted). Furthermore,

"the Court must … avoid resolving factual disputes" at this stage.  *Id.* (quoting *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020)).

Applying these standards, the City's motion must be denied.

### A.    Plaintiffs Have Adequately Alleged that the City Violated the ADA and Rehabilitation Act

The City fails to apply the correct legal standard for claims under Title II of the ADA and Rehabilitation Act.  To state a claim under the ADA and Rehabilitation Act, Plaintiffs must plausibly allege (1) that Tyshon was a "qualified individual[] with a disability;" (2) that the City was subject to the ADA and/or the Rehabilitation Act; and (3) that Tyshon was denied the opportunity to participate in or benefit from a City program, service, or activity, or was otherwise discriminated against, by reason of his disability.  *See McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003).  Because Plaintiffs seek damages, they must also plausibly allege intentional discrimination, "which may be inferred when a policymaker acted with at least *deliberate indifference* to the strong likelihood" of a violation of federally protected rights.  *Felix v. City of New York*, 344 F. Supp. 3d 644, 664-665 (S.D.N.Y. 2018) (emphasis added) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)).  "[C]ourts in this circuit have found that plaintiffs provided sufficient evidence of deliberate indifference when they could point to training deficiencies of which municipal entities were aware and which existed with respect to populations police would necessarily encounter as they did their duties."  *Id.* at 666.

The City does not dispute that Tyshon had a qualifying disability under the ADA and Rehabilitation Act (Defendant's Mot. to Dismiss, ("Br."), Dkt. No. 7 at 4 (discussing Defendant's "fail[ure] to provide a reasonable accommodation for the decedent's disability")); that the ADA and Rehabilitation Act applied to the City (*id.* (raising the limitation on the ADA that it "only

4

makes accommodation for mental disability")); or that policing by the RPD was a City of Rochester program, service, or activity within the meaning of the statutes (*id.*).  Nor does the City contest the sufficiency of Plaintiffs' allegations that it failed to provide adequate training to guide its officers in their encounters with people experiencing mental-health crises despite the awareness these encounters would occur, and that a lack of such training would likely result in a federal violation.  (Br. at 4; *see*, *e.g.*, Compl. ¶¶ 73, 76, 77, 90).  These unchallenged allegations are plainly sufficient to support a reasonable inference of deliberate indifference.  Rather than challenge the sufficiency of these claims, the City advances three narrow arguments, each of which fails for the reasons described below.

First, the City asserts that Plaintiffs failed to allege that the responding RPD officers knew Tyshon had a mental disability.  (Br. at 4).  But the Complaint alleges ample facts from which a plausible inference of such knowledge can be drawn.  For example, the Complaint alleges that Tyshon was actively "cutting himself" when he was confronted by RPD outside the Mission, and was repeatedly stating to the officers that he was "dangerous" and had to be shot or else he would have to kill them "for Jesus."  (Compl.  ¶¶ 44, 47.)  It also alleges that the RPD knew Tyshon had just come from the Mission, and that individuals who use the Mission's services are often known to struggle with mental illness.  (*Id.* ¶¶ 39, 41-42.)  The words, actions and circumstances alleged in the Complaint are sufficient to permit the plausible inference that the RPD officers knew Tyshon was suffering from a mental illness when they encountered him.  *See Felix v. City of New York*, No. 16-cv-5845 (AJN), 2020 WL 6048153, at *5 (S.D.N.Y. Oct. 13, 2020) (rejecting argument that city was entitled to summary judgment on ADA claim because police officers were unaware of plaintiff's disability and noting "[e]ven if they had doubts about Felix's mental state at that time, or were unsure they would find him in his apartment, the City does not articulate any reason why

those doubts should have persisted after the detectives saw Felix flee down the fire escape"); *see also Butchino v. City of Plattsburg*, No. 8:20-cv-796 (MAD/CFH), 2022 WL 137721, at *10 (N.D.N.Y. Jan. 14, 2022) (citing plaintiff's suicide attempt, his "singing about his difficult experience in Afghanistan," and his informing a defendant officer that he was taking a PTSD medication, as factors creating a reasonable inference that the police knew of plaintiff's mental illness, where the officer disputed that plaintiff informed anyone of his PTSD diagnosis); *Sage v. City of Winooski*, No. 2:16-cv-116, 2017 WL 1100882, *4 (D. Vt. Mar. 22, 2017) ("Here, the Complaint alleges that Mr. Sage's reference to Allen House should have communicated to the police that they were dealing with a mentally ill person. Accepting that allegation as true, Mr. Sage was not required to request an accommodation when approached by the police.").

Furthermore, while the City contends, without support, that the officers did not know whether Tyshon was mentally ill, "homicidal" or "intoxicated" (Br. at 2), these are just inferences the City wishes to draw. But at the current juncture, all reasonable inferences are required to be drawn in Plaintiffs' favor. *See Lopez*, 2021 WL 859384, at *2 (ruling that "on a Rule 12(b)(6) motion . . . the Court must … draw all reasonable inferences in favor of the plaintiff" (quoting *Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016))).

In any event, no such subjective awareness on the part of Officer Drake is required to state a claim under the statute. *See Felix*, 344 F. Supp. 3d at 644 (a defendant's unilateral contention that a plaintiff was not definitively acting in the manner of a mentally ill individual cannot "contradict" a "well-pled allegation that [plaintiff] was entitled to the ADA and Rehabilitation Act's protections."); *Sage*, 2017 WL 1100882, *4 (complaint properly alleged "obvious" disability—that is, defendants should have known about plaintiff's disability because police were called to "Allen House," which is known to house persons with serious mental illness). The

Complaint alleges that Tyshon was previously diagnosed with "PTSD, anxiety, and borderline personality disorder" (Compl. ¶ 29), and that Tyshon was actively engaging in self-harm and making incoherent statements during the arrest, (Compl. ¶¶ 44, 47).  These allegations are sufficient to establish, at the pleading stage, that Tyshon obviously suffered from a mental disability and was entitled to the protections of the ADA.

Next, the City claims that Plaintiffs have failed to identify a reasonable accommodation that could have been offered to Tyshon.  This is not correct.  Available accommodations identified in the Complaint include: (i) waiting to engage Tyshon while he was on a deserted street and posed no risk to anyone else, instead of immediately shining lights and pointing guns at him in an escalatory manner (Compl. ¶ 46); (ii) equipping RPD officers with non-lethal weapons that could be used to disable rather than kill (*id.* ¶¶ 52, 78); (iii) using physical measures, other than a lethal weapon, to remove the knife from Tyshon's possession (*id.* ¶ 53); and (iv) utilizing the Person In Crisis ("PIC") team that the City had already formed but failed to utilize (*id.* ¶ 84).  These allegations are sufficient to plead that a reasonable accommodation was available.  *See Sage*, 2017 WL 1100882, at \*4 (allegations "that the police could have accommodated [the plaintiff] by avoiding physical contact and calling a nearby mental health counselor" were "sufficient to overcome the City's motion to dismiss under Rule 12(b)(6)" in connection with the "question of whether the pleadings adequately asserted accommodations that should have been made by police"); *Durr v. Slator*, 558 F. Supp. 3d 1, 32-33 (N.D.N.Y. 2021) (holding that "[i]n the present matter, as in *Sage*. . . the Court finds that the allegations in Plaintiff's complaint are sufficient to support his ADA claim," where plaintiff alleged that "instead of placing Plaintiff in handcuffs, informing him that he was under arrest, and subsequently kicking him in the knee, [defendants] should have used de-escalation techniques").

7

The City appears to contend that non-lethal alternatives have limited effectiveness (*see* Br. at 2), but factual disputes about the efficacy of tasers or other non-lethal weapons in subduing emotionally disturbed persons are matters to be explored in discovery and ultimately decided by the jury. *See, e.g., Morales v. City of New York*, No. 13 Civ. 7667, 2016 WL 4718189, *6 (S.D.N.Y. Sept. 7, 2016) (availability of accommodation was question of fact, requiring denial of summary judgment); *Wagner v. City of New York*, No. 14 Civ. 2521, 2015 WL 5707326, *7 (S.D.N.Y. Sept. 28, 2015) (same).

Finally, the City argues that the ADA and Rehabilitation Act claims fail because Officer Drake's use of force was objectively reasonable. (Br. at 4-5.) But this argument is based exclusively on cases addressing the Fourth Amendment, as opposed to cases addressing disability discrimination claims. (*See* Br. at 4-5 (citing *Biggs v. City of New York*, No. 08-CV-8123 (PGG), 2010 WL 4628360, at *2, *4 (S.D.N.Y. Nov. 16, 2010) (excessive force case), and *Estate of Chipwata v. Rovinetti*, No. 02-CV-858 (DJS), 2004 WL 722166, at *6 (D. Conn. Mar. 31, 2004) (same)). Thus, the City applies the wrong standard to Plaintiffs' ADA and Rehabilitation Act claims. (Br. at 4-5.) For purposes of the ADA, the question is not whether the force used by the officer was constitutionally unreasonable, but rather, whether the method chosen "fail[ed] to reasonably accommodate the person's disability . . . , causing the person to suffer greater injury or indignity in that process than other arrestees." *Durr*, 558 F. Supp. 3d at 28; *see also Sage*, 2017 WL 1100882, at *3-4 (denying motion to dismiss ADA claim where questions of fact existed as to whether mentally-ill individual was direct threat to officers and whether reasonable accommodation could have been provided); *Butchino*, 2022 WL 137721, at *12 (denying motion for summary judgment where question of fact existed as to whether a reasonable accommodation was available to detained person with PTSD).

8

In short, police conduct can violate the statutory protections of the ADA and the Rehabilitation Act even if it does not violate the Constitution. *See Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232-33 (9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015). Plaintiffs' discrimination and constitutional claims are distinct and require different analyses. Even if Officer Drake's conduct was "objectively reasonable" (which, for reasons discussed below, it was not), it is not a basis to dismiss Plaintiffs' ADA and Rehabilitation Act claims. *See H.B. by & through Patricia F. v. Pittsburgh Pub. Schs.*, No. CV 19-1326, 2020 WL 2949367, at *6 (W.D. Pa. May 13, 2020), *report and recommendation adopted* 2020 WL 2933311 (W.D. Pa. June 2, 2020) (recommending denial of the motion to dismiss on similar grounds where defendant similarly conflated the "deliberate indifference" standards under the ADA and § 1983).

**B.      Plaintiffs Adequately Allege Their Remaining Claims**

The City seeks to dismiss Plaintiffs' four other federal and state-law claims based on the single argument that Officer Drake's decision to shoot and kill Tyshon was objectively reasonable as a matter of law. (Br. at 4-5.) This argument is both premature and incorrect, especially in light of the well-pled allegations of the Complaint and the reasonable inferences that must be drawn in Plaintiffs' favor.

The reasonableness of an officer's use of deadly force is an intensely fact-bound inquiry. The question is whether, based upon "the officer's knowledge of circumstances immediately prior to and at the moment" he deployed deadly force, he had "probable cause to believe that the suspect pose[d] a significant threat of death or serious physical injury to the officer or others." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 762 (2d Cir. 2003). As evidence of this fact-intensive inquiry, the City's "brief . . . is replete with [its] own versions of the events." *Id.* at 762 (ruling that factual dispute precluded summary judgment). This cannot be resolved at the motion to

dismiss stage. *See Rose v. City of Utica*, No. 614CV01256BKSTWD, 2015 WL 13852450, at *4 (N.D.N.Y. Dec. 2, 2015) (declining to dismiss complaint recognizing that reasonableness is a factual matter that could not be decided at motion to dismiss stage); *Daniels v. City of Binghamton*, 947 F. Supp. 590, 597 (N.D.N.Y. 1996) ("The inquiry into whether the force used was reasonable is a factual one, and the Court cannot say in the context of a motion to dismiss, as a matter of law that plaintiff could prove no set of facts to sustain [this] claim.").

Furthermore, even where a significant threat of death or serious physical injury exists, "the decision to shoot under [the] circumstances" may not always be "an objectively reasonable one." *Cowan*, 352 F.2d at 763; *see Dasrath v. City of New York*, No. 15-cv-766, 2018 WL 10501877, at *6 (E.D.N.Y. Sept. 25, 2018) (denying summary judgment on excessive force claim because triable issue of fact existed as to whether officer was reasonable in using lethal force against a knife-wielding mentally ill decedent); *Rose*, 2015 WL 13852450, at *4 (denying municipality's motion to dismiss excessive force claim stemming from police shooting of an emotionally distraught teenager armed with a shotgun); *Negron v. City of New York*, 976 F. Supp. 2d. 360, 368-369 (E.D.N.Y. 2013) (denying summary judgment on excessive force claim, observing that "even a legitimate desire to resolve quickly a potentially dangerous situation is not the type of government interest that, standing alone, justifies the use of force that may cause serious injury") (citation and internal quotation marks omitted).

Indeed, the discrepancies between the City's account of the facts and the allegations of the Complaint highlight the existence of factual disputes that cannot be determined at the pleading stage. (*Compare, e.g.*, Br. at 1 (Tyshon "was carrying a large 'butcher's' knife") *with* Compl. ¶ 40 (Tyshon "grabbed a bucket of ordinary kitchen knives"); *compare* Br. at 1 ("Officer Drake was forced to discharge his service weapon") *with* Compl. ¶ 46 ("a fellow officer said to Officer Drake,

'just get in your car, Drake, and let's back off.' But Officer Drake did not do so")). The Complaint alleges additional facts supporting an inference that Officer Drake's conduct was not objectively reasonable, including Officer Drake: (i) choosing to ignore his fellow officer's warning to "back off" and instead surrounding Tyshon with two other officers while shining bright lights and pointing their guns at him (Compl. ¶ 46); (ii) shouting commands at Tyshon despite their clear ineffectiveness (*id.* ¶ 49); and (iii) failing to be equipped with non-lethal tools and failing to utilize physical measures outside of lethal force to subdue Tyshon (*id.* ¶¶ 51-53). The City's efforts to re-cast the facts set forth in the Complaint and introduce factual assertions more favorable to the Defendant is plainly inappropriate in connection with a motion to dismiss. *See Lopez*, 2021 WL 859384, at *2 ("Crediting the factual determinations made by [defendant] would fly in the face of th[e] principles" that "on a Rule 12(b)(6) motion … the Court must accept all factual allegations … as true and draw all reasonable inferences in favor of the plaintiff" (internal quotation omitted)). The City's contentions also demonstrate the fact-intensive nature of the inquiry into the reasonableness of Officer Drake's use of force, which cannot be resolved at this stage.

The City cites two unpublished, nonprecedential opinions in support of its argument that Officer Drake acted reasonably when he shot Tyson: *Biggs v. City of New York*, No. 08-CV-8123, 2010 WL 4628360, at *2 (S.D.N.Y. Nov. 16, 2010) and *Estate of Chipwata v. Rovinetti*, No. 3:02-CV-858, 2004 WL 722166, at *6 (D. Conn. Mar. 31, 2004). (Br at 5.) But both *Biggs* and *Chipwata* addressed motions for *summary judgment* based on factual records developed through discovery, which has yet to occur in this action. Here, the Court has no testimony or factual record upon which to draw its conclusions.

Finally, it is notable that the City does not challenge that RPD has an unconstitutional municipal policy or custom of using excessive force, particularly against Black people and people

with disabilities, which resulted in Tyshon's death.  Defendant does not refute that Plaintiffs plead a well-documented policy and custom of subjecting Black people and people in mental health crisis to excessive (and too often, lethal) force, and in fact, the City concedes that the numerous instances of excessive force by RPD Officers against Rochester's Black people and those suffering from mental-health crisis set forth in the Complaint amount to an "alleged pattern of unconstitutional behavior." (Br. at 3.)  As such, for purposes of this motion, the City concedes that Plaintiffs have adequately alleged that the RPD has an unlawful municipal policy of violating the Fourth and Fourteenth Amendment rights of its Black and disabled citizens.

Under 42 U.S.C. § 1983 the City may be held liable where an "action pursuant to official municipal policy [or custom] of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Such a custom can be established by showing the municipality's deliberate indifference in the form of either acquiescence or a failure to provide adequate training to officers.  *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (internal quotations omitted).  As the City concedes, Plaintiffs have sufficiently alleged violations under both theories.  (*See* Compl. ¶¶ 67-85, 99-106.)

Because the City concedes Plaintiffs have sufficiently alleged an unconstitutional policy and practice and the Court cannot, at this stage, find that Officer Drake's actions were "objectively reasonable," Plaintiffs' § 1983 claim against the City must survive.[1]  Likewise, because the substantive elements of Plaintiffs' § 1983 claim and their state law claims for assault and battery

---

[1] The City also states that "there can be no liability against the City" because there is no liability against the individual officers "who are not named as parties," (Br. at 5.)  Of course, Plaintiffs are not required to name individual officers in order to proceed against the City. *Askins v. Doe No. 1*, 727 F.3d 248, 253–54 (2d Cir. 2013). *See also Sajimi v. City of New York*, No. 07-CV-3252 (ENV) (MDG), 2011 WL 135004, at *5 (E.D.N.Y. Jan. 13, 2011) (allowing suit against municipality when suit against individual officers dismissed for lack of service).  To the extent that the City intends to argue here that there is no individual *liability*, and thus no municipal liability, because the individual officers reasonably, that argument is premature and incorrect for the reasons explained at length above.

12

are "nearly identical," *Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (collecting cases), the state law claims survive as well.

### C.  The City Fails to Articulate Any Privilege that Shields the Municipality from Liability

The City argues that the "force used in this matter was reasonable and privileged," releasing the individual officers, and in turn, the City, from liability.  (Br. at 5.)  The City fails to articulate what privilege it believes is applicable here, nor does it provide any explanation or legal basis for this contention.  Nevertheless, assuming the City is referring to qualified immunity, a municipality "is not entitled to qualified immunity," regardless of whether Drake would be so entitled.  *Triolo v. Nassau Cty.*, 24 F.4th 98, 110 (2d Cir. 2022).  As the Second Circuit concluded in *Triolo*, a police officer's "immunity does not somehow transfer to his municipal employer.  The Supreme Court has explicitly rejected the idea that municipalities are entitled to qualified immunity under federal law."  *Id.* (citing *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166–67 (1993)).  In fact, "[a] municipal employer can be held vicariously liable for its individually immune employee under New York state law."  *Id.*  "[J]ust like any other principal-employer, [a municipality] has *respondeat superior* liability for its agent-employee's wrongdoing, even when that agent is entitled to personal immunity from damages."  *Id.* at 112.  The City has not set forth any theory to support a finding of immunity that shields it from liability, nor can it.

## II.  THE CITY'S REFERENCES TO UNSPECIFIC VIDEOS ARE INSUFFICIENT TO DISMISS THE COMPLAINT

A court may not consider materials beyond the pleadings on a Rule 12(b)(6) motion to dismiss unless they are attached to the complaint, incorporated by reference, or "integral" to the complaint, because the complaint "relies heavily" upon the document.  *Chambers v. Time Warner,*

*Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  The City asks the Court to consider video footage of Tyshon's death, but none is attached to or integral to the Complaint.

Beyond asking the Court to consider "surveillance and body worn camera footage," the City has not identified any specific video supposedly relied upon by Plaintiffs, or that should be considered by the Court.  Despite the City's assertions that videos of the RPD killing Tyshon exist (*see, e.g.*, Br. at 1 ("The entire incident is captured on camera;" "The entire police interaction is captured on video;" "a play by play narration of the subject video;" *id.* at 3 ("surveillance and body worn camera footage in this matter")), the City never identifies any specific video or videos for the Court's review.

Courts in this Circuit have rejected similar attempts and have required defendants to adduce *specific* video evidence purportedly relied upon by plaintiffs.  *See*, *e.g.*, *Holmes v. City of New York*, No. 14 CV 5253-LTS, 2016 WL 915332 (S.D.N.Y. Mar. 4, 2016).  In *Holmes*, the court refused to consider video evidence where, although the plaintiff conceded her use of "various videos" as sources for allegations, she "d[id] not, however, state that she drafted her pleading using *the specific videos proffered by Defendants* as source material."  *Id*. at *3 (emphasis added). Because no party has introduced any specific video into record, there is nothing for the Court to consider, nor is it necessary for the Court to consider any video evidence to decide the City's motion.

Even if the City had identified a specific video for consideration at this stage of the litigation, no such video can be deemed "integral" to the Complaint such that consideration would be warranted.  The City cites a footnote in *Moran v. Town of Greenwich*, No. 3:19-CV-722, 2021 WL 3604349 at *2 n.1 (D. Conn. Aug. 13, 2021) for the proposition that video evidence can be considered integral when the complaint is drafted using "specific" videos.  (Br at 3.)  But in that

same footnote, the *Moran* court explained that the video there was deemed incorporated into the complaint because: (1) it was "repeatedly referenced throughout" the complaint; (2) it was *"linked in the body" of the complaint*; and (3) "*neither [party] object[ed] to the Court's consideration of the video*." *Id.* (emphasis added).   None of those facts are present here.

There are sound reasons for not deciding the merits of a case based on video evidence before there is any discovery.   Setting aside that the City has not identified any video with particularity, it would be premature for the Court to decide the case without the benefit of discovery to ensure that the parties have identified and exchanged *all* relevant video footage and have the full context surrounding that footage, which may be unclear or incomplete.  *See Leo v. Long Island R. Co.*, 307 F.R.D. 314, 326 (S.D.N.Y. 2015) (videos may be "blurry and often shot from . . . a considerable distance, leaving it unclear . . . what actions were being portrayed.").

This Court should not dismiss the Complaint based upon an unspecified video that has not explored through fact discovery.  Nor should this Court heed Defendant's vague request, included in the conclusion of its brief without legal support, to convert this motion into one for summary judgment on this basis.  *Hellstrom v. U.S. Dep't of Veterans Aff.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.")); *see also Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 fn. 4 (S.D.N.Y. 2015) ("Defendants, perhaps acknowledging that if the videos  are not considered their motion to dismiss is unlikely to succeed, request that if the Court finds that the videos are not properly before it that the Court then convert their motion to a motion for summary judgment . . . . Because the parties in this case are in the early stages of discovery "the plaintiff has not had the opportunity to gather and present evidence in opposition to the defendant's motion," and so the Court declines to convert the motion. . . .").

15

## CONCLUSION

For the foregoing reasons, the Court should deny the City's motion to dismiss.


Dated:  July 18, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

*Attorneys for Plaintiffs*
*Kennetha Short and Pernell Jones, Sr., in their*
*capacity as administrators of the Estate of Tyshon*
*Jones*

By:   /s/ Henry J. Ricardo

</div>

| | |
|---|---|
| Alanna Kaufman | Muhammad U. Faridi |
| Douglas E. Lieb | David S. Kleban |
| | Christina M. Seda-Acosta |
| KAUFMAN LIEB LEBOWITZ | Kevin Opoku-Gyamfi |
| & FRICK LLP | Maggie O'Neil |
| 18 E. 48th Street, Suite 802 | David Erroll |
| New York, New York 10017 | PATTERSON BELKNAP |
| (212) 660-2332 |  WEBB & TYLER LLP |
| dlieb@kllf-law.com | 1133 Avenue of the Americas |
| akaufman@kllf-law.com | New York, New York 10036 |
| | Tel: (212) 336-2000 |
| | mfaridi@pbwt.com |
| | hjricardo@pbwt.com |
| | dkleban@pbwt.com |
| | cseda@pbwt.com |
| | kopokugyamfi@pbwt.com |
| | moneil@pbwt.com |
| | derroll@pbwt.com |

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Dated:  July 18, 2022

<div style="margin-left:40%">

Respectfully submitted,

*Attorneys for Plaintiffs*
*Kennetha Short and Pernell Jones, Sr., in their*
*capacity as administrators of the Estate of Tyshon*
*Jones*

By:   /s/ Henry J. Ricardo

</div>

Alanna Kaufman
Douglas E. Lieb

KAUFMAN LIEB LEBOWITZ
& FRICK LLP
18 E. 48th Street, Suite 802
New York, New York 10017
(212) 660-2332
dlieb@kllf-law.com
akaufman@kllf-law.com

Muhammad U. Faridi
David S. Kleban
Christina M. Seda-Acosta
Kevin Opoku-Gyamfi
Maggie O'Neil
David Erroll
PATTERSON BELKNAP
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
mfaridi@pbwt.com
hjricardo@pbwt.com
dkleban@pbwt.com
cseda@pbwt.com
kopokugyamfi@pbwt.com
moneil@pbwt.com
derroll@pbwt.com

<div style="text-align:center">17</div>