UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETHA SHORT and PERNELL JONES, SR.,
in their capacity as administrators of the ESTATE
OF TYSHON JONES,

                                          Plaintiffs,

        – against –

CITY OF ROCHESTER,

                                          Defendant.

6:22-cv-06263

**DECLARATION OF MADELINE J. MORE IN SUPPORT OF PLAINTIFFS'
OPPOSITION MOTION PURSUANT TO FED. R. CIV. P. 56(d)**

I, Madeline J. More, declare and state as follows:

1. I am an associate at Patterson Belknap Webb & Tyler LLP, and counsel for Kennetha Short and Pernell Jones, Sr. ("Plaintiffs") in this action. I am familiar with the prior proceedings in this case and with the facts and circumstances set forth below.

2. I submit this declaration in accordance with Federal Rule of Civil Procedure 56(d).

**Plaintiffs Are Seeking Discovery Relevant to Their Claims**

3. Through discovery, Plaintiffs have sought to develop facts relevant to their claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the United States Constitution, and New York state law. Defendant City of Rochester (the "City") has produced some relevant documents but has failed to produce other documents needed to fully develop the pertinent facts. Plaintiffs have not had an opportunity to take any depositions because of the incompleteness of the City's document productions.

4. Plaintiffs have requested documents related to the in-service training that the Rochester Police Department ("RPD") provides to its officers, including training on the use of force, de-escalation tactics, the use of less lethal weapons, and interactions with civilians in crisis. (*See, e.g.*, Ex. 1, (Plaintiffs' Requests for Production ("RFP")) Nos. 15, 48, 52, 58–65). The City has not completed the requested production of these in-service training-related documents.

5. To assess how RPD developed its policies and procedures, and to develop the facts surrounding RPD's response to the shooting of Tyshon Jones, Plaintiffs have sought the production of emails from certain RPD officers who likely communicated about these relevant issues. (*See* Ex. 1, RFP Nos. 24–27). Plaintiffs have proposed to the City search terms designed to elicit emails related to use of force, excessive force, civilian complaints, crisis intervention, de-escalation tactics, and the shooting of Tyshon Jones. (*See* Ex. 2 (June 3, 2024 E-mail from M. More to P. Naylon with attachment "2024.06.03 Revised Search Terms.docx") at 1). The City has produced some emails that specifically address the shooting of Tyshon Jones, but has not produced other relevant emails related to RPD's policies and procedures and, as far as Plaintiffs are aware, has not conducted a comprehensive search of electronically stored information for communications related to the majority of Plaintiffs' search terms.

6. To determine whether RPD was, or should have been, on notice of excessive force by its officers (particularly disproportionate rates of excessive force targeted at Black people and/or people experiencing mental illness) Plaintiffs have sought production of documents from RPD databases housing records of investigations involving civilian complaints, police reports, and police discipline. (*See* Ex. 1, RFP Nos. 5–6, 28–29, 40–43, 54, 57). The City

has produced some documents from these databases, but Plaintiffs understand it has not completed its production of all relevant documents.

7.  Because this case involves questions regarding the propriety of firearm use by RPD officers, Plaintiffs have sought production of documents related to the RPD's policies and training materials for the use of firearms, as well as documents related to the training that the involved officers received regarding the use of firearms. (*See* Ex. 1, RFP Nos. 84–86). It is Plaintiffs' understanding that compliance with departmental policy is among the relevant factors in determining the objective reasonableness of a police officer's use of force. *See, e.g.*, *McLeod v. Llano*, 2021 WL 1669732, at *5 (E.D.N.Y. Apr. 28, 2021) (citing *Brown v. City of New York*, 798 F.3d 94, 101 n.11 (2d Cir. 2015) (admitting portions of the New York City Police Department Patrol Guide as relevant to reasonableness of force under the Fourth Amendment)); *Tardif v. City of N.Y.*, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017) (same, and observing that "[w]hether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable"). The City has not produced these documents related to firearms policy and training, nor has it served responses and objections to Plaintiffs' requests on those topics despite the fact that discovery has not been stayed.

8.  Plaintiffs have sought deposition testimony of members of the RPD whose roles relate to the collection, reporting, and analysis of RPD data, and the development, revision, and maintenance of RPD policies and procedures, including Administrative and General Orders. (*See* Ex. 3 (Plaintiffs' 30(b)(6) Deposition Notice to Defendant City of Rochester, Plaintiffs' Deposition Notice to Joseph Hayes, Plaintiffs' Deposition Notice to Adrian Martin)). Such depositions would likely elicit facts relevant to Plaintiffs' claims, including facts bearing on (1)

3

how the RPD develops policies and procedures, including the policies and procedures governing officers' use of lethal force, officers' use of less lethal weapons, and officers' interactions with individuals suffering from mental health crises; (2) the motivating reasons behind the creation of the Crisis Intervention Team and the ways in which the Crisis Intervention Team is utilized by the RPD; (3) how the RPD tracks officers' use of force, and specifically officers' use of force against Black residents or individuals suffering from mental health crises; and (4) how the RPD ensures officer compliance with Administrative and General Orders.

9. Plaintiffs also intend to take the deposition of officers involved in the shooting of Tyshon Jones. Such depositions would likely elicit facts relevant to Plaintiffs' claims, including facts bearing on (1) the indications to RPD officers that Tyshon suffered from a mental health disability; (2) the reasonableness of potential accommodations for Tyshon's disability, such as the use of de-escalation tactics and employing the RPD's Crisis Intervention Team; (3) the officers' failure to employ less lethal weapons (such as the multiple beanbag guns available to them and the taser carried by Officer Drake) and the reasons for that failure; and (4) Officer Drake's decision to shoot Tyshon five times in quick succession, and to continue shooting Tyshon even after he was incapacitated.

**The Discovery Plaintiffs Seek Would Create a Genuine Issue of Material Fact, to the Extent One Does Not Already Exist on the Current Record**

10. The facts Plaintiffs seek related to RPD in-service training, including firearm training, are relevant to whether the officers involved in the shooting of Tyshon Jones used excessive force, as Plaintiffs understand that the training an officer received is relevant to whether that officer's use of force was objectively reasonable. *See, e.g.*, *Dunham v. Lobello*, 2023 WL 3004623, at *9 (S.D.N.Y. Apr. 19, 2023); *Gibbs v. Borona,* 2021 WL 4726519, at *2 n.2 (D. Conn. Oct. 11, 2021). Therefore, Plaintiffs expect the training records to create a

4

genuine issue of material fact—to the extent one does not already exist—as to whether the involved officers' use of force was objectively reasonable.

11. RPD training records are also relevant to Plaintiffs' ADA and RA claims, as the training records bear on the City's training and supervision of its police officers and would create a genuine issue of material fact—if one does not already exist—as to whether the accommodations Plaintiffs claim should have been afforded were reasonable under the circumstances.

12. More specifically, the training-related information Plaintiffs seek would bear on the following issues, all of which are material to Plaintiffs' claim that the RPD used excessive force when Officer Drake initially used deadly force against Tyshon and as he continued to shoot Tyshon even after Tyshon was already on the ground:

- Whether the RPD has a policy of reassessing the perceived threat after firing a certain number of shots, and whether Officer Drake complied with that policy;
- What RPD officers are trained is a safe defensive distance from a subject armed only with a knife while their weapons are already drawn;
- How, and under what circumstances, RPD officers are supposed to use de-escalation techniques under RPD policy and training, including and especially to respond to a subject experiencing a mental health crisis;
- How, and under what circumstances, RPD officers are trained to use less-lethal force such as bean bag guns or tasers under RPD policy and training;
- How, and under what circumstances, RPD officers are supposed to use and/or have used tasers in order to disarm subjects armed with a knife under RPD policy and training.

5

13. Information about in-service RPD training would also bear on Plaintiffs' claims under the ADA and RA. For example, the information Plaintiffs seek would show (1) how RPD officers are supposed to identify whether a subject is experiencing a mental health crisis under RPD policy and training; (2) how RPD officers are supposed to use de-escalation techniques under RPD policy and training, including and especially to respond to a subject experiencing a mental health crisis; and (3) how RPD officers are supposed to employ the RPD's Crisis Intervention Team as part of a tactical response to a subject demonstrating signs of mental distress and self-harm.

14. The facts Plaintiffs seek related to the emails of certain custodians, as well as records from RPD databases, are relevant to Plaintiffs' ADA and RA claims, as the emails and records are expected to reveal information regarding the treatment of civilians, particularly civilians suffering from mental illness, by RPD officers. With respect to the ADA and RA claims, the emails and records will create a genuine issue of material fact—to the extent one does not already exist—as to whether the City could have provided a reasonable accommodation, and whether the involved officers failed to reasonably accommodate Tyshon Jones' disability.

15. More specifically, these email records would bear upon the following facts, all of which are relevant to whether Tyshon's mental health disability could have reasonably been accommodated *prior to* the use of any deadly force:

- The degree to which RPD officers have historically used less lethal force such as beanbag guns or tasers when faced with people experiencing mental health crises;

- How often, and in what circumstances, have RPD officers used less lethal force when responding to calls at or near the social services provider Open

6

> Door Mission, which is where the RPD officers here knew Tyshon Jones had visited before the shooting;
> 
> - How often, and in what circumstances, have RPD officers used deadly force when faced with people experiencing mental health crises;
> 
> - Whether RPD officers have received complaints of mistreatment towards civilians experiencing mental health crises, and the circumstances surrounding these complaints.

16. Plaintiffs expect that the depositions of RPD members, including those involved in the shooting of Tyshon Jones, will yield evidence relevant to both Plaintiffs' excessive force, ADA, and RA claims. Testimony of the involved officers would reveal the officers' perceptions of the night of the shooting and allow Plaintiffs the opportunity to test the veracity of the statements made in the Declarations of the involved officers that the City submitted with its motion for summary judgment.

17. More specifically, deposition testimony would illuminate the following facts, all of which are relevant to the reasonableness of Officer Drake's actions; to whether Officer Drake knew or reasonably should have known that Tyshon had a mental health disability; and whether the RPD reasonably could have accommodated that disability prior to the use of deadly force:

> - What observations Officer Drake made of Tyshon's demeanor when he encountered Tyshon earlier on the morning of Tyshon's death;
> 
> - Whether Officer Drake understood a person cutting himself with a knife, expressing a desire to be shot by police, and making religious statements to be consistent with a person experiencing a mental health crisis;

- Why Officer Drake provided inconsistent and inaccurate accounts of having paused between shots when the video evidence demonstrates that he did not;

- Why Officer Drake continued shooting after Tyshon was already on the ground;

- What Officer Drake perceived, and whether those perceptions were objectively reasonable, about whether Tyshon could pose an imminent threat of serious physical injury to him at various points during the encounter;

- Why the officers armed with tasers chose not to use them;

- Why the officers with beanbag guns available to them chose not to use them;

- Why the officers failed to employ effective and standard de-escalation techniques;

- Why the City did not deploy members of the Crisis Intervention Team and/or why the responding officers did not attempt to avoid an escalatory confrontation until the Crisis Intervention Team arrived.

18.     Additionally, the City's motion for summary judgment has come well before the Court's deadline to complete expert discovery, and Plaintiffs have not had the opportunity to take any expert discovery.  Because the summary judgment motion comes well in advance of the period for expert discovery contemplated by the Court's scheduling order, Dkt. No. 87, Plaintiffs have not conclusively determined what, if any, expert discovery will be necessary to create disputes of material fact and/or prove their claims at trial.

19.     While the following list is not exclusive, Plaintiffs have identified several ways in which expert testimony could be relevant.  For instance, the testimony of a forensic pathologist and/or scene reconstructionist could provide probative evidence of how the shooting

8

disabled Tyshon Jones before killing him and tend to prove that one or more shots fired by Officer Drake were excessive. Or the testimony of a police tactics expert could tend to prove that RPD could have reasonably accommodated Tyshon Jones' disability through alternate tactics, but failed to do so in violation of the ADA and RA.

20. Even on the limited record adduced to date, Plaintiffs are in the process of actively consulting with experts to determine how expert testimony may facilitate the jury's understanding of which shot or shots killed Tyshon, when in the sequence of events they were fired, and whether Tyshon posed any threat at the specific moment those shots were fired. Plaintiffs are also actively consulting with experts to determine how reasonable de-escalation tactics and other accommodations for Tyshon's mental health disability could have prevented the encounter from being a fatal one.

**Plaintiffs Have Diligently Pursued Discovery in This Matter**

21. To date, Plaintiffs have served a series of requests for production of documents, consisting of dozens of individual requests (not including third-party subpoenas). Plaintiffs have also served deposition notices for members of the RPD. In particular, Plaintiffs noticed the depositions of the officers involved in the shooting of Tyshon for the fall of 2023, upon the expectation that the City would have substantially completed its document productions by then. (*See* Ex. 4 (Plaintiffs' Deposition Notices to Officers Matthew Drake, Audrey Wicher (then Audrey Jackson), Jared Carello, Sir Glynn, and Trevor Jones)). However, when it became clear that the City's production was far from complete, Plaintiffs were forced to postpone the depositions. (*See* Ex. 5 (September 26, 2023 E-mail from K. Opoku-Gyamfi to P. Naylon) at 1). Plaintiffs cannot effectively and efficiently depose the officers until they receive important

9

documents regarding those officers' training, supervision, and prior statements regarding the incident.

22. Plaintiffs have brought the issue of the City's deficient production to the City's attention on more than one occasion. By way of example, Plaintiffs wrote a letter to the City on December 12, 2023 advising the City of its failure to comply with its discovery obligations. (*See* Ex. 6 (December 12, 2023 Letter from K. Opoku-Gyamfi to P. Naylon)).

23. Plaintiffs have also written letters to the Court to bring to the Court's attention the City's deficient discovery. On December 21, 2023, Plaintiffs wrote to the Court and requested an informal discovery conference regarding the City's failure to timely produce discovery related to the requested custodial emails and documents from RPD databases housing records of investigations involving civilian complaints, police reports, and police discipline. Dkt. No. 61. Plaintiffs again wrote to the Court on May 16, 2024, requesting an informal discovery conference to address, in part, the City's failure to collect and produce RPD evaluations of the officers involved in the shooting of Tyshon Jones. Dkt. No. 97.

24. As a result of Plaintiffs' letters, Plaintiffs have appeared before the Court through informal discovery conferences to address the City's deficient productions. Discovery conferences have been held on May 8, 2023, May 22, 2023, August 9, 2023, March 14, 2024, April 10, 2024, April 24, 2024, and May 30, 2024. Dkt. Nos. 32, 40, 48, 83, 92, 93, and 103. At many of these conferences, the Court has ordered the City to supplement its deficient productions.

**Despite Plaintiffs' Best Efforts, Plaintiffs Have Been Unsuccessful in Completing Discovery**

25. Plaintiffs have not yet been able to obtain certain discovery necessary to adequately respond to the City's pending motion for summary judgment.

26. Upon the Court's denial of the City's motion to dismiss, the parties agreed to a discovery plan and proposed schedule pursuant to Rule 26(f), which the Court adopted. After stipulated extensions, fact discovery is currently scheduled to conclude on September 13, 2024. Dkt. No. 87.

27. However, throughout discovery, the City has either ignored Plaintiffs' pending requests for production or made incomplete and deficient productions of documents.

28. While Plaintiffs' requests for Court intervention have proven largely successful in satisfying some of Plaintiffs' document discovery needs, the discovery that remains outstanding is necessary in order for Plaintiffs to sufficiently oppose the City's summary judgment motion.

29. Despite Plaintiffs' requests for Court intervention, and despite Plaintiffs' efforts to negotiate with the City, the City has still failed to adequately produce necessary discovery. Regarding RPD training materials, Plaintiffs provided a list of discrete in-service training sessions for which they sought the underlying materials in an effort to minimize the City's burden. (*See* Ex. 7 (May 7, 2024 Email from M. More to P. Naylon) at 1–2). However, even after Plaintiffs' follow up emails on May 23, 2024 and June 10, 2024, (*See* Ex. 8 (May 23, 2024 Email from M. More to P. Naylon) at 1, Ex. 9 (June 10, 2024 Email from M. More to P. Naylon)), the City has failed to fully produce the requested in-service training materials (officers' basic training materials were produced by third-party Monroe Community College). In addition, Plaintiffs have worked with the City to revise the search terms related to Plaintiffs' request for emails from certain custodians, ensuring that the City reviews only emails relevant to Plaintiffs' requests. (*See* Ex. 2, noting that the attached list of search terms was revised based on "comments from the IT Department" and a website identified by the City). Notwithstanding

Plaintiffs' efforts, the City has failed to produce emails responsive to the vast majority of Plaintiffs' search terms. In addition, since serving the City with requests for documents related to firearms training materials, Plaintiffs have followed up with the City for a response. (*See* Ex. 10 (May 21, 2024 Email from M. More to P. Naylon)). But to date, the City has not responded to Plaintiffs' requests for firearms training materials.

30. When Plaintiffs attempted to informally discuss these outstanding discovery issues, the City abruptly requested that the Plaintiffs consent to the bifurcation and stay of "*Monell* discovery" pending a proposed summary judgment motion, and shortly thereafter, filed a motion to stay "*Monell* discovery." Dkt. No. 96. At oral argument on the motion to stay discovery, the City then requested for the first time that the Court stay discovery in its entirety. (Ex. 11 (July 2, 2024 Hearing Tr.) at 17:21–24).

31. The City is currently proceeding as if it is relieved from complying with Plaintiffs' requests for discovery until the Court issues a decision on the City's motion to stay discovery, despite Judge Pedersen's holding that discovery in this matter would continue during the pendency of the motion to stay. Dkt. No. 103. As such, Plaintiffs have since been unable to obtain necessary discovery from the City.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 26, 2024

                                                                /s/ Madeline J. More
                                                                 Madeline J. More

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Madeline J. More
Madeline J. More