

www.pbwt.com

June 20, 2025

**Via ECF**

Ian Eppler
Associate
(212) 336-2205
ieppler@pbwt.com

Hon. Mark W. Pedersen
United States Magistrate Judge
U.S. District Court for the Western District of New York
100 State Street
Rochester, New York 14614

     Re:  **Estate of Tyshon Jones v. City of Rochester (6:22-cv-06263)**

Dear Judge Pedersen:

  We write on behalf of Plaintiffs to request an informal discovery conference regarding non-party Sgt. Adam DeVincentis' refusal to produce text messages responsive to a third-party subpoena. Plaintiffs will ask the Court to impose a deadline for Sgt. DeVincentis to produce responsive documents, or, if necessary, will submit a motion to compel the production of those documents.

### Background

  In 2023, the Plaintiffs served third-party subpoenas on the officers involved in the shooting of Tyshon Jones, seeking any text messages regarding the shooting. The City moved to quash the subpoenas. Dkt. No. 63. In connection with that motion to quash, three of the officers involved in the shooting submitted declarations in which they asserted that they had not used their cell phones to communicate regarding the shooting. Dkt. No. 63-2 ¶ 9 (Officer Drake); Dkt. No. 63-3 ¶ 6 (Officer Glynn); Dkt. No. 63-4 ¶ 6 (Officer Carello). The parties subsequently reached agreement on a procedure by which the Plaintiffs could obtain the officers' cell phone records from their cell phone carriers. Dkt. No. 88.

  The Plaintiffs later obtained cell phone records showing that the officers' declarations were false. Specifically, the records showed that, shortly after the shooting, the involved officers exchanged text messages with each other and with Sgt. DeVincentis, who then served as Executive Vice President of the Rochester Police Locust Club (the RPD officers' union). These text messages may contain evidence relevant to the Plaintiffs' claims, such as the officers' candid statements about the shooting, the RPD conduct that precipitated it, and whether RPD training and supervision adequately prepared them for the encounter. The text messages may also be used at trial to impeach Officers Drake, Glynn, and Carello by demonstrating these officers submitted false declarations to the Court in which they incorrectly claimed that they had not used their cell phones to communicate about the shooting.

June 20, 2025
Page 2

June 20, 2025
Page 2

   The involved officers have represented that they no longer have access to the text messages. Accordingly, Plaintiffs served a third-party subpoena on Sgt. DeVincentis on July 9, 2024. Ex. A. The subpoena called for "[a]ll Documents and Communications" in Sgt. DeVincentis' possession concerning the shooting of Tyshon Jones, including all text messages that Sgt. DeVincentis sent to or received from the involved officers during the week after the shooting. *Id*. On July 19, 2024, Sgt. DeVincentis objected to the subpoena. Ex. B. The "primary basis" for his objection was that "any communications which took place between any of the named officers and Sgt. DeVincentis as their union representative would have constituted privileged communications." *Id*.

   The Plaintiffs continued to discuss the issue with Sgt. DeVincentis' counsel over email in the ensuing weeks. Ex. C. In that email exchange, Sgt. DeVincentis's counsel acknowledged that Sgt. DeVincentis possessed a "group message to the involved officers" that was responsive to the subpoena, and that the conversation was "short." *Id*. Sgt. DeVincentis did not object to producing the "short" exchange based on any claim of burden. However, Sgt. DeVincentis stood behind his assertion that the messages were privileged. *Id.*

   On August 30, 2024, the Court granted the City's motion to stay discovery. Dkt. No. 138. Accordingly, on September 12, 2024, the Plaintiffs informed Sgt. DeVincentis that they "w[ould] not take further steps to pursue the text messages at th[at] time," but "reserve[d] all rights to enforce the subpoena after the stay is lifted." Ex. C.

   On May 21, 2025, the Court lifted the stay of discovery. Dkt. No. 148. Shortly thereafter, the Plaintiffs renewed their demand that Sgt. DeVincentis produce documents responsive to the subpoena. Ex. C. In connection with that demand, the Plaintiffs explained why Sgt. DeVincentis' privilege argument is meritless. *Id*. Sgt. DeVincentis stood behind his claim of privilege and invited the Plaintiffs to ask the Court to address the issue. *Id.*

<u>Argument</u>

   Sgt. DeVincentis cites the "union relations privilege" recognized in *Hernandez v. Commissioner of Baseball*, 331 F.R.D. 474 (S.D.N.Y. 2019) as a basis to withhold documents responsive to the Plaintiffs' subpoena. This argument is meritless.

   As an initial matter, Sgt. DeVincentis has refused to produce a privilege log compliant with Local Civil Rule 26(d) that substantiates and specifies his claims of privilege, even though the responsive content is purportedly limited in volume and even though it has been nearly a year since service of the subpoena. This conduct effects a waiver of any purported privilege. *Hinterberger v. Catholic Health System, Inc.*, 284 F.R.D. 94, 105 (W.D.N.Y. 2012) ("A failure to comply with [the privilege log] requirement results in a waiver of the asserted privilege in the withheld information.").

   Substantively, moreover, there is no "Second Circuit case law that recognizes a 'union relations privilege.'" 331 F.R.D. at 477; *see also Leslie v. Starbucks Corp.*, 2022 WL 7702642,

June 20, 2025
Page 3

at *2 n.1 (W.D.N.Y. Sept. 23, 2022) ("The Second Circuit does not recognize a union-employee privilege."). Indeed, the *Hernandez* court *denied* a motion to quash a subpoena based on the purported "union relations privilege" because it concluded that the privilege did not exist. 331 F.R.D. at 478. Sgt. DeVincentis cannot withhold documents based on a privilege that does not exist in the Second Circuit.

It is true that some federal courts outside of the Second Circuit have recognized a federal common-law "union relations privilege." However, the courts that have recognized a union relations privilege have done so extremely narrowly, in a manner that would not apply to the communications covered by the subpoena here. "[T]o the extent that a union relations privilege has been recognized under the federal common law, it covers only communications made in the context of representation by a union representative during disciplinary proceedings," and applies "only to situations in which *management* [is] seeking communications." 331 F.R.D. at 477-78 (citing *U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 39 F.3d 361 (D.C. Cir. 1994)) (emphasis added); *see also Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052 (N.D. Ill. 2011)). Neither circumstance is present here. Plaintiffs are not the managers of the officers involved in the shooting of Tyshon Jones—indeed, they are *suing* the officers' management, the City of Rochester. Moreover, the text messages were not "communications made . . . during disciplinary proceedings," as the officers involved in the shooting were never subject to disciplinary proceedings.

\*   \*   \*

Because Sgt. DeVincentis has no basis to assert privilege over the text messages covered by the subpoena, Plaintiffs request that the Court order Sgt. DeVincentis to produce the text messages or invite the Plaintiffs to file a formal motion to compel the production of the text messages. The Plaintiffs request an informal discovery conference to address the issue at the Court's earliest convenience.[1]

Respectfully submitted,

*/s/ Ian Eppler*

Ian Eppler

CC:   Matthew Rich, Esq. (via email)
      *Counsel for Sgt. Adam DeVincentis*

---

[1] Counsel for Sgt. DeVincentis has indicated a preference for an in-person discovery conference. The Plaintiffs suggest that an in-person conference is not necessary because this issue can be addressed via a telephonic or video discovery conference, but do not object to an in-person discovery conference if that is the Court's preference.