# Exhibit 1



www.pbwt.com

David Kleban
Partner
(212) 336-2641
dkleban@pbwt.com

July 23, 2025

Via Email Attachment

Patrick B. Naylon, Esq.
City of Rochester Law Department
Corporation Counsel
30 Church Street, Rm. 400A
Rochester, NY 14614

      Re:    *Estate of Tyshon Jones v. City of Rochester*,
               No. 6:22-cv-06263 (W.D.N.Y.)

Dear Mr. Naylon:

      We write on behalf of Plaintiffs regarding numerous deficiencies in the City's productions. Since Plaintiffs served their first Requests for the Production of Documents in October 2022, the City has consistently failed to meet its discovery obligations and has repeatedly ignored deadlines imposed by the Court and the Federal Rules. The City's discovery failures persist despite the Court's admonition that "the City will need to take steps . . . to keep this case on track." Dkt. 138 at 14. Plaintiffs will seek appropriate relief from the Court unless the City confirms by **July 28, 2025** that it will cure all the deficiencies in collection and production identified below, and in fact cures those deficiencies no later than **August 1, 2025**.

      The Court-ordered deadline for completion of document production was July 8, 2025. The City has not produced complete sets of documents in at least the following categories:

    (1) Email correspondence and other electronically stored information ("ESI");
    (2) In-service training materials for RPD officers;
    (3) Qualifications and certifications for service weapon and less-lethal weapons trainings attended by the officers present at the shooting of Tyshon Jones (the "Involved Officers");
    (4) Professional development section ("PDS") files and evaluations for the Involved Officers; and
    (5) Crime reports stored on the Law Enforcement Records Management Systems ("LERMS") database and written reports prepared by the Commanding Officer of the RPD's Bureau of Organizational Development and Administration;

July 23, 2025
Patrick Naylon
Page 2

(6) Responses to Plaintiffs' Interrogatories and Requests for Admission (RFA).

*Category 1: Electronically Stored Information*

On June 3, 2024, after diligent efforts to confer with the City, Plaintiffs sent a revised list of search terms to be applied to the e-mails of agreed-upon City custodians to identify documents responsive to multiple RFPs served by Plaintiffs, including the First and Second Sets of RFPs served on the City on October 31, 2022, and January 13, 2023 respectively.[1]  The City has neither objected to these terms nor produced the vast majority of documents responsive to these proposed search terms.  On July 22, 2025, the City disclosed that it had run searches on seven custodians' documents and claimed that these searches had yielded 16,415 unique hits.  The City did not specify the terms that were used to run this search, including whether the terms were based on the search terms provided by Plaintiffs on June 3, 2024.  The City then estimated that running 18 other searches over 19 other custodians' data would likely yield over 150,000 unique hits, concluding, "it seems we need to do something to reduce the number of hits."  The City's belated objections – coming two weeks after the deadline for completing document discovery and over a year after Plaintiffs circulated their revised search parameters – are improper.  However, as discussed in our July 22 email, Plaintiffs are willing to consider alternative proposals from the City, so long as it provides any alternative search terms (including hit counts broken down by term and custodian) by **July 24**.  However, the City must also provide term-by-term and custodian-by-custodian hit counts for the June 3, 2024 search by **July 24** and make a complete production by **August 5** of any revised search terms that the parties agree upon.

Further, after Plaintiffs' repeated requests, the City finally made a production of 50 emails on June 6, 2025.  Despite more repeated requests, the City has not confirmed the query to which these emails are responsive.  Moreover, as Plaintiffs pointed out in an email to the City on June 10, 2025, even this small production is systemically deficient.

*First*, the 50 emails are produced in the form of a single consolidated PDF file without any accompanying metadata, which violates Fed. R. Civ. P. 34(b)(2)(E)(ii).  It is also inconsistent with the ESI protocol Plaintiffs proposed on February 15, 2023, to which the City never objected.  We consider the City to have waived any objection to Plaintiffs' proposed ESI protocol.

*Second*, the production, which contains extensive and unwarranted redactions of non-privileged information (including email metadata such as senders, recipients and subject lines), is not accompanied by a supporting privilege log, thereby contravening Local Rule 26(d).  *See* W.D.N.Y. Local Civ. R. 26(d).  On June 10, 2025, we explained that we were "willing to accept the production of redacted documents in lieu of a privilege log in this instance," so long as the City "reproduce[s] documents with meritless redactions removed."  However, the City has not reproduced any documents.

---

[1] This revised list significantly narrowed the search parameters and custodians to address concerns voiced by the City regarding an earlier list of search terms sent by Plaintiffs to the City on May 19, 2023.

15853920

July 23, 2025
Patrick Naylon
Page 3

While Plaintiffs followed up with the City on June 17, 2025 and again on July 10, 2025 regarding these deficiencies, the City has not provided any substantive response to date. Accordingly, we understand the parties to be at an impasse on these issues, unless you confirm by July 28, 2025 that the City will (1) produce all emails responsive to Plaintiffs' requested search terms; and (2) cure the deficiencies in the City's existing email production no later than August 1, 2025.

*Category 2: In-Service Training Materials for RPD Officers*

On May 7, 2024, Plaintiffs sought the underlying training materials for a list of training topics that would be responsive to Plaintiffs' RFPs.[2] On June 4, 2024, the City said that this list was "extensive" and "significantly over burdensome," and identified Plaintiffs' demand as its primary motive for moving for a stay of the discovery process. In an attempt to compromise with the City, Plaintiffs on June 6, 2024 sent the City the following revised list of in-service trainings for which it sought the underlying training materials:

- De-Escalation Tactics for Military Veterans
- Military De-escalation & Reintegration
- Ceasefire University Workshop
- Law Enforcement Forecasting Group
- Situational Judgment Test Development Workshop
- Leadership, Planning, and Decision-Making: Operational and Tactical Command
- Ethical Awareness Moderator Course
- Aggressive Deadly Behavior In-Service Training
- Use of Force Updates
- Communicating When It Counts
- CIT Inservice
- Effectively Responding to Emotional Crisis Training
- Assisting Individuals in Crisis Training
- Autism Recognition, Response & Risk Management Training
- Mental Health First Aid Training Course
- Suicide Prevention, Intervention & Postvention
- Crisis Intervention Team Basic School (T-18-099)
- TASER Operator In-Service (T-18-104)
- Mental Health First Aid for Public Safety (T-18-194, 217, 234, 245, 247)
- Master Taser Instructor School (T-18-213)
- Close Quarter Tactics (T-18-221)

Notwithstanding Plaintiffs' willingness to narrow their requests to a modest and clearly relevant set of training materials, the City has failed to produce the underlying material for *any* of these trainings. The deadline to produce such documents has passed. Plaintiffs will seek

---

[2] Pursuant to RFPs 52, 58, 59, 61, and 64 (served on the City on June 9, 2023) and RFP 85 (served on the City on April 16, 2024).

3

15853920

July 23, 2025
Patrick Naylon
Page 4

appropriate relief from the Court unless the City confirms by July 28, 2025 that it will produce any written training materials concerning the above-listed trainings—and in fact produces them by August 1, 2025.

*Category 3: Qualifications and Certifications for Service Weapon and Less-Lethal Weapons Trainings Attended by Involved Officers*

On June 11, 2024, Plaintiffs sought less-lethal weapon certifications (including but not limited to Taser certifications),[3] and all service weapon qualifications[4] for Drake and other Involved Officers. As Plaintiffs noted, the City's discovery obligation included producing any sign-in logs and staffing spreadsheets for such service weapons and less-lethal weapons trainings attended by the Involved Officers.

Instead of producing responsive documents, on July 9, 2025, the City sent a table, the provenance of which it did not disclose, containing purported "qualification scores" for the Involved Officers in the 2020-23 period. The City did not explain what underlying documents were used to prepare this table, nor why it has still not produced those documents. The City also does not identify which "less-lethal" weapons on its table the "qualification scores" pertained to (e.g., whether they related to Tasers, beanbag shotguns, or any other less-lethal weapons).

Plaintiffs will seek appropriate relief from the Court unless the City confirms by July 28, 2025 that it will produce all qualification- and certification-related documents identified in the Plaintiffs' June 11, 2024 email, and makes that production by August 1, 2025.

*Category 4: PDS Files and Evaluations for the Involved Officers*

Since October 2022, Plaintiffs have sought PDS files and evaluations for the Involved Officers.[5] On June 14, 2023, the City agreed to produce the PDS files for all Involved Officers, but its production on September 13, 2023, was deficient and incomplete. Plaintiffs identified these gaps and deficiencies in an email sent to the City on April 5, 2024. The City acknowledged these deficiencies in its email to Plaintiffs on May 2, 2024 and explained that these deficiencies were due to certain personnel being out on leave. *See also* Dkt. 97. The City has not made any attempt to produce them since then.

Plaintiffs will seek appropriate relief from the Court unless the City confirms by July 28, 2025 that it will remedy the deficiencies identified in Plaintiffs' April 5, 2024 email, and in fact remedies them by August 1, 2025.

---

[3] Pursuant to RFPs 14, 15 (served on the City on October 31, 2022), RFPs 48 and 49 (served on the City on April 14, 2023) and RFPs 52 and 53 (served on the City on June 9, 2023).
[4] Pursuant to RFPs 84-86 (served on the City on July 2, 2024).
[5] Pursuant to RFP 11 (served on the City on October 31, 2022), RFP 30 (served on the City on January 13, 2023), and RFP 75 (served on the City on June 9, 2023).

4

July 23, 2025
Patrick Naylon
Page 5

*Category 5: Deficiencies in the City's July 9, 2025 Production*

The City's July 9, 2025 production, which purports to produce documents responsive to Plaintiffs Sixth and Seventh Sets of RFPs, was served belatedly and suffers from numerous deficiencies.

- RFP 87 sought 16 crime reports, numbered A through P, stored on the LERMS database. The City produced only three crime reports (numbered D, F, and G). The City claimed in its Reponses & Objections that eight other crime reports were not "accessible via electronic search" and "would require a hand search, location, copying and production." This is not a valid objection. Furthermore, the City has not explained why it has not produced other crime records numbered L through P in the RFP. Please produce these documents immediately.

- RFP 88 sought "written reports prepared by the Commanding Officer of the Bureau of Organizational Development and Administration of the RPD as chair of the Internal Advisory Committee of the RPD from January 1, 2016, to the present." In its Responses and Objections, the City stated that this Bureau no longer exists within the RPD and that "the Office of the DCA is searching to see if any such documents exist." The document discovery deadline was July 8, 2025. Any purported search and collection should have been completed by the production deadline.

Additionally, the City served its production along with a belated set of Responses & Objections ("R&Os") to the Sixth and Seventh Set of RFPs on July 9, 2025 a day *after* the document discovery deadline closed and well over a year after Plaintiffs served the RFPs on April 16, 2024. These R&Os raised – for the first time – substantive objections to the Sixth and Seventh RFPs. Due to the belated nature of these R&Os as well as the City's failure to meet and confer with Plaintiffs on these RFPs, the City has waived its objections to both sets of RFPs.

Further not only are the City's objections belated, they are also without any substantive basis whatsoever. For instance, in its response to Plaintiffs' RFP No. 85, the City stated that it "does not comprehend what Plaintiffs mean by 'Service Weapon Training Sessions.'" In fact, this term was clearly defined by Plaintiffs in the RFP served on April 16, 2024.[6] Plaintiffs will seek appropriate relief from the Court unless the City confirms by July 28, 2025 that it will produce all documents responsive to RFPs 87 and 88, and does so by August 1, 2025.

*Category 5: Failure to respond to interrogatories and RFAs*

On June 18, 2025, Plaintiffs served their second set of interrogatories on the City, comprised of just one request: for the City to identify the manufacturer and model number of any

---

[6] "Service Weapon Training Session" means any training intended to impart knowledge or skill to RPD Patrol Division officers in the use of their Service Weapons, including but not limited to training with or about the Service Weapon during the Basic Police Officer Course, in-service training, remedial training, and training related to or arising from disciplinary action. *See* Plaintiffs' Set of RFPs, April 16, 2024.

5

15853920

July 23, 2025
Patrick Naylon
Page 6

Less-than-Lethal weapons that the Involved Officers possessed at the time of the Incident. Although the deadline for responding to the interrogatory was July 18, 2025, the City has neither responded nor objected within this deadline. Plaintiffs will consider the City to have waived any objections to this interrogatory. Please respond to the interrogatory immediately and, in any event, no later than by August 1, 2025.

Finally, Plaintiffs also served a single RFA on the City on June 18, 2025; July 18, 2025 was the deadline for the City's response. Again, the City has neither responded nor objected to the RFA. Under the circumstances, Plaintiffs will consider that the City has waived any objections to this RFA and, by its default, has admitted the RFA.

\*\*\*

Plaintiffs continue to review the City's productions to date and expressly reserve all rights to raise additional deficiencies in the City's productions. The City must confirm by **July 28, 2025** that it will produce the missing documents and remedy the additional deficiencies discussed above no later than **August 1, 2025**. If the deficiencies outlined above are not remedied by August 1, 2025, Plaintiffs will seek appropriate relief from the Court.

The City's discovery conduct in this case has demonstrated a willful disregard for the Court's orders and for the obligations imposed by the Federal Rules and Local Rules. Plaintiffs reserve the right to seek an appropriate sanction. *See* Dkt. 138 at 16-17 ("If [agreed-upon discovery] deadlines are not met by either side . . . [the Court] will likely award attorneys' fees or sanctions" if it grants a motion to compel).

Very truly yours,

Patterson Belknap Webb & Tyler LLP

David Kleban

15853920