# Exhibit 13

**Matthew, Jabari (x2203)**

| | |
|---|---|
| **From:** | Eppler, Ian (x2205) |
| **Sent:** | Tuesday, July 29, 2025 4:57 PM |
| **To:** | Naylon, Patrick B. |
| **Subject:** | RE: Short v. City of Rochester // Status of Discovery // Follow-up Correspondence |

Pat,

Thank you for your email. On depositions, we proposed September 15-16 and September 29-30 for the Drake and Wicher depositions in an email of July 11. Counsel for both parties have been holding these dates for several weeks. Please let us know this week which of those date pairs works for the witnesses. If we do not hear from you, we will select one.

On document discovery, to be clear, the deficiencies identified in the Plaintiffs' July 23 letter are not new. Rather, the Plaintiffs have sought each category of document discussed in the July 23 letter for over a year, and the City's objection to these demands is grossly belated. Last year, the City cited the purported burden of producing these documents as a basis for staying discovery. *See, e.g.,* Dkt. No 96-2 ¶ 7 (contending that producing documents associated with training sessions would "seriously burden" the City). When Judge Pedersen stayed discovery last summer, he made clear that "if [the City] loses its motion for summary judgment . . . this Court cannot ease the burden of discovery" because "[d]iscovery will proceed." Dkt. No. 138 at 14. After Chief Judge Wolford denied the City's motion for summary judgment, the Plaintiffs sent the City a letter on May 21 making clear the categories of discovery outstanding. After the City had an opportunity to review the Plaintiffs' letter, the Plaintiffs proposed a discovery schedule in which fact discovery would be completed on July 8, 2025. On May 22, you wrote, on behalf of the City, that you were "good with [that] date[]." In other words: under the schedule that the City agreed to, the time to object to the Plaintiffs' discovery demands was months ago, and the time for the City to produce responsive documents passed weeks ago.

Moreover, the specific objections and concerns that you raise in your email are misplaced:
- ***Email discovery***—you have asked that the Plaintiffs "meet and confer particularly with our IT folks" to address allegedly burdensome email search terms. But at the City's request, the Plaintiffs conferred with the City's IT department last year and revised its proposed email search terms to address the City's technical limitations. *See* Dkt. No. 106-3. There is no need for further conferral with the City's IT department on this issue at this late date. If the City is concerned about the burden associated with reviewing documents associated with the Plaintiffs' search terms, the onus is on the City to propose alternate search terms that supply the Plaintiffs with necessary documents while mitigating the burden on the City. In a July 22 email, the Plaintiffs invited the City to provide alternative email search terms, along with hit counts (broken down by term and custodian) for the City's proposed terms and the Plaintiffs' proposed terms. The City has failed to do so.
- ***In Service Training Materials***—you have asked the Plaintiffs to "identify specific sessions" of interest to mitigate the burden associated with locating in-service training materials. The Plaintiffs did so last year, requesting materials associated with several specific training sessions identified based on a review of RPD training orders produced during further discovery. *See* Dkt. No. 106-2.

1

We reiterated the list of specific sessions of interest in our July 23 letter. Even though the Plaintiffs have already done what you now request, the City has refused to produce documents.

- **Weapons Qualification**—as we explained in our July 23 letter, the table of "qualification scores" for the Involved Officers is insufficient to satisfy the Plaintiffs' request for documents related to the Involved Officers' weapon qualifications for both service weapons and less-lethal weapons. Even though the existence of a table of "qualification scores" necessarily implies that underlying documents related to weapons qualification exist and were used to create the table, the City has failed to comply with its obligation to produce those documents. Additionally, your recollection that Drake's "certification was presented" is not correct. The City has not produced any weapons certification or qualification documents for any officers (service weapon, less lethal, or otherwise), beyond the insufficient table.
- **Evaluations**—thank you for providing the City's position on the status of its production of requested officer evaluations.
- **LERMS Requests**—the Plaintiffs' July 23 letter did not ask the City to run text-based searches in LERMS. Rather, the letter requested that the City produce specific identified documents stored in the LERMS database. Your email does not explain why the City is incapable of producing these documents.

While the City raises the aforementioned objections to the Plaintiffs' discovery requests in its July 28 email, the Plaintiffs' July 23 letter also addresses certain other discovery deficiencies, including deficient responses to the Plaintiffs' Sixth and Seventh Requests for Production and the City's failure to respond to the Plaintiff's Second Set of Interrogatories and First Set of Interrogatories. The City has long since waived its objections to these discovery demands and must respond comprehensively to them.

The City suggests that it resolve these discovery deficiencies by producing some or all materials that it produced to the New York Attorney General as part of that office's investigation into RPD. However, the City has already produced these materials to the Plaintiffs to resolve the Plaintiffs' FOIL request for them. The Plaintiffs have reviewed the Attorney General documents and they do not satisfy the discovery requests at issue.

Because the discovery deadline passed weeks ago and the City has failed to remedy these longstanding discovery deficiencies, the Plaintiffs intend to seek Court intervention in the near future. Since these discovery deficiencies have already been discussed at great length for many months, the Plaintiffs do not believe additional conferral is necessary. However, if the City nonetheless wishes to confer, the Plaintiffs are available to meet and confer between 1 pm and 3 pm on Thursday, July 31 and between 10 am and noon on Friday, August 1.

Best,
Ian

---

**From:** Naylon, Patrick B. <Patrick.Naylon@CityofRochester.Gov>
**Sent:** Monday, July 28, 2025 4:50 PM
**To:** Palle, Bharath (x2135) <bpalle@pbwt.com>
**Cc:** Kleban, David S. (x2641) <dkleban@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>
**Subject:** RE: Short v. City of Rochester // Status of Discovery // Follow-up Correspondence

2

External: Think before you click.

Dear David,

Thank you for your correspondence of July 23.
I would note initially that giving three business days notice to correct deficiencies identified in your six page letter is not really reasonable. It would be impossible for me to get in touch with the various individuals involved to make determinations regarding your various requests. Indeed, I was out on the 25th so I would state it borders on the impossible.  I think if the goal here is to get you what we have, I would ask a reasonable time to respond before seeking court intervention. Further, I would note that in any event, a meet and confer is necessary following a deficiency letter before seeking court intervention.  Ultimately, the problem here is not any attempt to withhold discovery, but issues with antiquated systems and inadequate support.


I will preface this by indicating that the main problem here is that most records the City has particularly as to training and evaluations are or were literally paper records.
The City has been working on a project for two years now to upgrade via a program through Benchmark analytics which will result in training and evaluation records being stored digitally. Unfortunately, that system is not currently in place and hence the notion of electronic discovery for this type of information/ documentation is really a misnomer. In addition to formal responses, which you certainly are entitled to,  I would offer you the opportunity to speak informally with our Lt. in charge of PDS (Professional Development) to get a better sense of what we have and what we don't have.

Let me address your statements generally simply to request additional time to respond in full by 7/31, which would seem a bit more reasonable.

1) E-mail correspondence.  I sent you correspondence requesting you meet and confer particularly with our IT folks with respect to limitations on the searches given the failure to limit searches by date, the number of

3

custodians, and in some cases the fact that your group custodians do not exist, and in particular working with IT to make for searches that produce less than 15,000 e-mails for one search.

2) In service training materials. The fact is that prior to Lt. Ciulla taking the helm of PDS in 2023 training materials were all "paper." Making the situation even more difficult is that there was no particular protocol in place for the retention of training provided. I have been working with the PDS unit on several cases attempting to secure in service training materials for various law suits and investigations and the fact is we have been able to locate some limited materials. I have not received any materials responsive to in-service training particularized for the issues raised in this case, assuming for instance you aren't looking just for firearms certifications which generally are more readily available. I don't recall at this point if I gave you the Training Orders, which can be readily provided, that simply indicate when and what (title) was trained over an extensive period. If you have those and identify specific sessions, we can certainly make a specific search, though again typically the response is for the time frame prior to this incident, that documents have been searched for but not found. In fact I just responded to discovery in another matter after 4 months of searching that we had no materials in response to demands for certain training records from 2015 – 2019. Ultimately, as indicated, if we meet and identify particular training offered, I can request a search for any materials for that specific unit and then have our folks search, likely yet again responding unable to locate.

3) The only certification for less than lethal weapons was Officer Drake and I believe his certification was presented as were any training materials we had.

4) I will check again on evaluations, but I believe we have provided what we actually have. Again, these were all literally 'paper' evaluations when they were actually in fact completed
.
5) I need to review your request regarding LERMS, but you need to understand that LERMS is an old system which stores PDFS. It has very limited search capabilities, as I understand it the majority of PDFs were entered without

4

OCR technology. Hence some documents can be pulled via a search, but others won't be found. Furthermore, if records have been sealed, in the LERMS system they simply don't show up. So for instance you may have a valid CR#, search for it, my understanding is it doesn't come back labeled "sealed' it just comes back as no record found.

So my request to you with respect to your 8/1 deadline to correct, is that you give me that time frame to review your specific letter, verify what we do and don't have and respond as to what we don't have specifically, and if there are items we need to do a more thorough search, we come up for a time frame.  As for e-mails, which really is really the only ESI information we have, I would request a meet and confer to narrow that down as I don't think you want a data dump of tens if not hundreds of thousands of e-mails and, even assuming you did, we wouldn't have the capability of reviewing that many for privilege given the time frames.

Finally, I would make a proposal to you that may be of some use. I offer this in the interests really of demonstrating, we aren't holding things back, but locating and producing is particularly onerous given the seemingly antiquated record keeping. The OAG has an on-going investigation into the 'polices and practices' of RPD.  It commenced soon after the Daniel Prude incident in 2020 and is on-going.  We have provided just about everything we have to the OAG in the context of that investigation, though as indicated, it certainly isn't particularized, for example, to officer involved shootings or for that matter any particular officers.  In the interests of transparency and to give you a better idea of what we do have and what we don't, as their inquiry has been exhaustive, we could discuss potentially sharing confidentially indexes of information which is clearly work product, to see if that would be of any interest.

Most importantly, however, I wanted to get this off to you today to indicate it is obviously impossible for me to state today exactly what can and can't be addressed with respect to purported deficiencies and I would ask to 7/31 to do so as I am not available at all on 8/1.  Also,  as has been the case throughout, while I know you don't want extensions, but to the extent they are necessary to confirm compliance and avoid motions, we would obviously agree to the same as necessary.

Thank you.

Pat

---

**From:** Palle, Bharath (x2135) <bpalle@pbwt.com>
**Sent:** Wednesday, July 23, 2025 2:48 PM
**To:** Naylon, Patrick B. <Patrick.Naylon@CityofRochester.Gov>
**Cc:** Kleban, David S. (x2641) <dkleban@pbwt.com>; Eppler, Ian (x2205) <ieppler@pbwt.com>
**Subject:** Short v. City of Rochester // Status of Discovery // Follow-up Correspondence

> Warning: This email originated from an external source. Please do not open attachments, click on links, or provide your username or password if the source is suspicious.

Counsel –

Please see the attached correspondence from David Kleban. Following up on your July 14, 2025 email, please let us know if Officer Wicher and retired Officer Drake are available to be deposed on 9/15 and 9/16 or on 9/29 and 9/30.

Regards,
Bharath

**Bharath Palle, S.J.D.**
Law Clerk
He | Him | His
**Patterson Belknap Webb & Tyler LLP**
1133 Avenue of the Americas | New York, NY 10036
T: 212.336.2135

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.