# Exhibit 14



**City of Rochester**

Department of Law
City Hall Room 400A, 30 Church Street
Rochester, New York 14614-1295
www.cityofrochester.gov

**Patrick B. Naylon**
Municipal Attorney

May 31, 2024

Madeline More
Ian Appler
Alanna Kaufman
Doug Lieb
Patterson Belknap
1133 Avenue of the Americas
New York, NY 10036

*Via e-mail*

    *Re: Kenneth Short and Pernell Jones, Sr. in their capacity as administrators of the*
     *Estate of Tyshon Jones v City of Rochester*
    Case No.:  22-cv-6263

Dear Counselors,

    This correspondence is in response to yours of May 23, 2024. Your correspondence of May 23, 2024, filled with inaccuracies and assumptions is nothing more than an effort to shift attention from and cover your offices abject failure to appropriately address AT&T's apparently inadvertent production of documentation in response to the subpoena of non-party cell phone records.

    Your correspondence erroneously assumes erroneously that because text messages existed in 2021 that they would remain on the phones of individuals nearly two years later. Personally, based upon my own experience, I would have been quite surprised to find that cell phone messages remained in place for such a length of time.  It hardly defies credulity that people delete text messages after they make them. Just out of curiosity, I checked my own phone. The oldest message was six months. As long as I was on my phone, I cleaned out old text messages. I would be surprised if you didn't do the same.

    It would likewise be surprising that individuals could recall with specificity any particular text conversation had or not had years before. Yet individuals would likely remember their cell phone use preferences as to what they do and don't use their phone for. It would seemingly come as no surprise that officers don't use their cell phones regarding official police activity. In any event, the negative response to my inquiry of the officers as to whether they had text messages from years before is hardly a mystery. Indeed, the very reason for the subpoenas was to determine if the cell phone providers maintained any text messages as they clearly were not on the officers' personal phones.

      Your suggestion that there is a 'serious issue as to spoliation' since non-parties did not have text messages on their phones nearly two years post-incident is totally without merit. They checked their phones; old messages were not there, frankly to no ones' surprise. Your statement that they were asked to obtain "usage logs" is inaccurate. The officers were asked to contact their carriers to ascertain whether the carriers could provide text message content from the 2021 incident. Officers were advised the carriers responded that they did not maintain those messages. Indeed, this is borne out by the AT&T response and the presumed lack of response from Verizon.

      Your comment relating to your belief that numbers from the Locust Club and RPD Professional Standards, which may be group texts, could be on-point; I simply cannot verify one way or the other. However, it would not be unexpected to find that the Professional Standards Section contact officers to schedule mandatory PSS interviews after an officer involved shooting. Likewise as to communications from the Locust Club regarding representation at such interviews. You can certainly find this out for yourself, but neither PSS or the Locust Club would use text messages to relay substantive information concerning any particular police activity.

      The death of Mr. Jones was no doubt a tragic incident which impacted many. Reasonable minds may differ on what could have been done differently. Your offices election not to sue the officer who used deadly force suggests that reasonable minds do not differ on the propriety of the shooting. While admittedly not without its challenges, the City has been open in its discovery responses despite what appears to be purely fishing expeditions. It is unfortunate that it now appears that your office strategy has devolved to throwing accusations concerning alleged impropriety in discovery as tactical maneuvers designed to avoid the court's attention from the ultimate legal issues in the case.

      There was no spoliation. There was nothing to produce. To no one's surprise, in January 2023 text messages from March 2021 were not on their phones. The entire reason for subpoenaing the providers was to ascertain whether the carriers had the messages. They confirmed what the officers had already determined: the carriers did not maintain text messages.

      Very truly yours,

*Patrick B. Naylon*

Patrick B. Naylon
Municipal Attorney