# Exhibit 15

**Matthew, Jabari (x2203)**

| | |
|---|---|
| **From:** | More, Maddy (x2292) |
| **Sent:** | Tuesday, June 11, 2024 3:52 PM |
| **To:** | Naylon, Patrick B. |
| **Cc:** | Eppler, Ian (x2205); Erroll, David (x2009) |
| **Subject:** | RE: Short v. City of Rochester, No. 22-cv-06263 (WDNY) |

Hi Pat,

Thank you – we understand that not all training leads to a certification and therefore the documentation of training will differ. Plaintiffs are not requesting that the City create any documentation that does not already exist. We only request that the City: (1) produce the documents that are responsive to our RFPs, including any sign-in logs and staffing spreadsheets for trainings attended by the Involved Officers; or (2) if sign-in logs and staffing spreadsheets were created for trainings attended by the Involved Officers, but no longer exist, provide a brief explanation as to how or why such documents no longer exist.

With regard to certifications, please recall that the City is also required to produce the following:

- Less-lethal weapon certifications (including but not limited to Taser certifications) pursuant to RFPs 14, 15, 48, 49, 52, and 53; and

- All service weapon qualification or certification records for Drake and other Involved Officers pursuant to RFPs 84-86.

Best,
Maddy

**Madeline More**
She | Her | Hers
Associate
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
T: 212.336.2292
mmore@pbwt.com

**From:** Naylon, Patrick B. <Patrick.Naylon@CityofRochester.Gov>
**Sent:** Tuesday, June 11, 2024 8:47 AM
**To:** More, Maddy (x2292) <mmore@pbwt.com>
**Cc:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Erroll, David (x2009) <derroll@pbwt.com>
**Subject:** RE: Short v. City of Rochester, No. 22-cv-06263 (WDNY)

**External: Think before you click.**

Good Morning Maddy,

1

This may help in explaining that not all trainings are the same. Not all trainings require certifications. Some do, some don't. Taser, for example requires a certification. If you are not certified, you cannot carry. Those types of training would necessarily have specific requirements that other issue based trainings do not. You will note, for example, that some of the mandatory Taser training was not for all personnel, but only those certified. Training sessions that do not require any sort of certification in order to proceed would not necessarily be subject to the rigors that mandatory certification trainings do. Hence, you may end up with differences in attendance records depending on the nature of the training.

Pat

---

**From:** More, Maddy (x2292) <mmore@pbwt.com>
**Sent:** Monday, June 10, 2024 4:14 PM
**To:** Naylon, Patrick B. <Patrick.Naylon@CityofRochester.Gov>
**Cc:** Eppler, Ian (x2205) <ieppler@pbwt.com>; Erroll, David (x2009) <derroll@pbwt.com>
**Subject:** Short v. City of Rochester, No. 22-cv-06263 (WDNY)

Hi Pat,

I hope you had a nice weekend. As part of Plaintiff's RFPs, we have requested production of all documents related to certain training topics, which includes documentation of the actual attendance of RPD officers, such as sign-in sheets or attendance logs. These requests include the following RFP numbers: (from June 9, 2023) RFPs 52, 58, 59, 61, and 64; (from April 16, 2024) 85, and 86.

The City has offered inconsistent statements regarding whether RPD has records of which officers attend training and when.

For example, on April 4, 2024, you stated that "Records of what [Drake and Glynn] actually attended are not available, but we could go back to locate in-service training orders which would indicate what was offered and when." The following day, you relayed a statement by Lt. Ciulla that he "also confirmed that officer training files do not record in-service attended as compliance with the orders is understood." This email thread is attached for your reference.

During the April 24 conference with the Court, you stated at different points that "they don't have an attendance record," and "I think there has to be a roster because they keep track," when discussing attendance records.

As part of its response to the NY Attorney General, the City produced PSS file 19-0186, which included a one-page excerpt from a 31-page document entitled "Taser in-service log_signature" and a screen image of a staffing summary Excel spreadsheet titled "Allen In-service_Jan 9." Copies of these documents are attached. Documents of these two types fall within the definitions of documents requested in the above-listed RFPs.

Consequently, Plaintiffs request that the City produce all training attendance signature logs and staffing summary Excel files that relate to the training materials requested in the relevant RFPs.

Additionally, mentioned in our April 10, 2024 email, Plaintiff's RFP 61 (June 9, 2023) requested:

2

> "All Documents concerning Professional Development Section training and Policy related to performance evaluations and assessments of RPD personnel."

Consequently, Plaintiffs request that the City produce all training materials that are used to prepare officers who are assigned to the Professional Development Section regarding evaluations, including (but not limited to) prior versions of G.O. 207 in effect from 2007 through the present.

Please produce the above-listed documents by June 21, 2024. We are available to meet and confer to the extent you believe that would be helpful.

Best,
Maddy

**Madeline More**
She | Her | Hers
Associate
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
T: 212.336.2292
mmore@pbwt.com

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.