UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH SHORT and PERNELL JONES, SR.,
In their capacity as administrator of the ESTATE OF
TYSHON JONES,

Plaintiffs

-v-

CITY OF ROCHESTER,

Defendant

MATTHEW DRAKE
DECLARATION

Case No. 6:22-cv-06263

Mathew Drake, being duly sworn, deposes and says:

1.     I am a police officer with the Rochester Police Department. I submit this Declaration in support of the City of Rochester's motion for summary judgment dismissing this action.

2.     On March 10, 2021, I was working for the RPD in my capacity as a uniformed police officer. I was functioning as a patrol officer operating a marked RPD police vehicle. At or about 2:55 AM, I became involved in looking for an individual who reportedly had entered and taken a number of knives from the Open Door Mission at 210 W. Main St. in the City of Rochester. My involvement in that incident is documented in my reports and BWC footage of the incident involving the plaintiffs' decedent, Tyshon Jones.

3.     Submitted herewith as Exhibit A is the Investigative Action report I completed which describes the actions taken by me. The statements made in my report are incorporated herein as if fully set forth in this declaration and considered as part of this motion for summary judgment seeking dismissal of the action.

4.     Ultimately, I discharged my service pistol at the decedent as he approached me with a long knife in hand, as I believed I was in imminent danger of being stabbed with the knife. A photograph of the knife is submitted as Exhibit H to the Naylon declaration. I understood that my use of deadly physical force was justified under the circumstances then and there existing as necessary to meet and stop the use of deadly physical force against me. I believed then and now

the deadly force used was reasonable and necessary under the circumstances to stop Mr. Jones from using deadly physical force upon me, that is, being stabbed with the knife.

5. Because of the immediate, constant, and uninterrupted threat posed by the decedent, it was necessary for me to be in position the entire time to quell Mr. Jones' use of deadly physical force. Assuming Mr. Jones did have some sort of disability, that had nothing to do with my actions. I responded to his actions, not because of whether he was or was not suffering from a disability, but rather due to his holding, advancing, and threatening with the knife.

6. My intent from the moment I saw the decedent with the knife was to get him to drop the knife or stop advancing, so the life threatening actions of the decedent could be eliminated. As can be heard on the BWC audio, I repeatedly directed him to simply drop the knife and stop. Unfortunately, he continued to approach and threaten Officers and refused to obey our commands to stop and put down the knife. Ultimately, what occurred as depicted in te BWC was dictated by the decedent's actions and inactions in failing to stop and failing to drop the knife.

7. Considerations of what might have, could have, or should have been done differently is merely second guessing the decision the decedent's actions forced me to make in the immediacy of the moment. Tragically, as the result of Mr. Jones' actions and his failure to heed the warnings to stop and/or drop the knife and his quick advance at me with the knife, the use of deadly force was employed to stop the threat of use of deadly force upon me.

8. Those circumstances and actions of the decedent as depicted on my BWC were the reasons I took the action I did, and why I understand that I did not violate Mr. Jones' constitutional right to be free from unreasonable force. I was also cleared by a Monroe County Grand Jury of any wrongdoing.

9. As can be seen on the BWC footage, upon arrival Mr. Jones was threatening and capable of using deadly physical force as he had the long knife in his hand and was threatening to use it. From arrival, my initial and constant objective and obligation was first to eliminate that risk.

10.     During the encounter, I did not have any information or reason to know what was causing Mr. Jones to act as he was. Ultimately, until that threat of deadly force was removed and the situation made safe, the underlying reason was not my focus.

11.     Given the circumstances, my goal was first and foremost to eliminate the threat posed by Mr. Jones with the knife and to make the situation safe. Only after the situation was safe could I possibly have determined the next step in our encounter with the decedent. Unfortunately, the situation was never safe until the threat of deadly force from Mr. Jones was eliminated. The elimination of that threat and the unfortunate and tragic result was dictated by Mr. Jones' actions.

12.     As the situation was unsafe due to the presence and threat of use of the long knife from the moment of arrival, Mr. Jones failure to drop the knife, or even to stop his advance mandated that my, and the other officers response, was to initially remove the threat. That threat was constant from the moment of arrival until I discharged my weapon.

Dated: ___**6 / 10**___, 2024

_____
Mathew Drake.



# ROCHESTER POLICE DEPARTMENT
## INVESTIGATIVE ACTION REPORT
### NARRATIVE ONLY

**CR #**
**2021-00043317**

**Ex A**

| DETAIL | | |
|---|---|---|
| Victim's Name (Last, First, Middle) or Name of Business | Location of Offense | Beat |
| Drake, Matthew, D | 210 W Main ST | 209 |
| Date/Time of Occurrence | Offense / Charge / Incident (Most Recent Classification) | |
| 03/10/2021 02:55 | MENACING 2ND, ATT AGG ASSAULT 1ST | |

**NARRATIVE**

On 3/10/21 at 0255Hrs, I was dispatched to 210 W Main St for the report that a M/B had stolen knives from the location. While searching the area, I spoke to an unknown M/H who stated that he observed a person matching the suspect description cutting himself and screaming in the area of Cascade Drive.

When I arrived at the intersection of Cascade Dr / Industrial St, I observed a M/B matching the suspect description standing at the dead end of Industrial St with his back to me. I stopped mid-street on Industrial St and exited my marked patrol car to speak with the individual. (S) immediately began advancing towards me with a large butcher knife, held directly in front of him at arms length.

I gave repeated commands for (S) to "drop the knife" and "stop walking towards me", to which he replied "I'm going to murder you... I have to kill you for Jesus". At this time, I directed other responding officers to move backwards in order to create time and distance while we attempted to deescalate the situation.

Responding officers and I continued to walk backwards southbound onto Cascade Dr and then eastbound onto W Main St, giving repeated commands to "drop the knife" and "stop walking towards us" as we moved. (S) was non responsive other than to say several times, "I'm dangerous" and "You have to kill me".

As I moved eastbound on W Main St, (S) continued to focus directly on me and began to advance at a noticeably quicker pace. I attempted to back pedal faster to increase the distance, which had been closed to around 20ft, realizing in the process that I was approaching the wall of the Open Door Mission and was going to run out of room to retreat farther within another 15ft.

As I moved to within 5ft of the wall, (S) again increased his speed towards me, still advancing with the butcher knife held directly in front of him. At this time, fearing that my life was in imminent danger, I was forced to "point shoot" three rounds from my issued service weapon. Upon assessment I observed (S) continuing towards me and I fired two additional rounds, at which point (S) stopped advancing and fell to the ground.

I quickly assessed that (S) no longer posed an immediate threat to myself or others and moved in to disarm (S) prior to rendering first aid.

| Reporting Officer | | IBM # | Date | Reviewed By |
|---|---|---|---|---|
| DRAKE | MATTHEW | 1956 | 03/23/2021 | JOSEPH, DAVID A |